Braches vs. Anderson.

---

BRACHES vs. ANDERSON.

1. If two be partners, and lumber be sold to either of them, for the benefit of the firm, they are both liable.

2. The fact that the lumber was not charged on the books of the plaintiff, against the defendant, is not material, if he was in fact a partner, and the lumber was furnished for partnership purposes.

## APPEAL from St. Louis Circuit Court.

### STATEMENT OF THE CASE.

This was a suit brought by the plaintiff to recover the value of a quantity of lumber, alleged to have been sold and delivered by the plaintiff to the defendant and one Charles L. Bierman, who was alleged to have been a partner of defendant at the time. The account commenced December 13, 1848, and extended to March 12, 1849. Bierman deceased before this suit was instituted, and his widow, who was administratrix of his estate, was made a defendant in this suit; but, before the trial, the suit was dismissed as to her. The defendant, in his answer, denied that he purchased the lumber in question, and denied any indebtedness to the plaintiff, and denied also, that he owned or had any interest in the land on which the lumber was used for repairing a distillery building.

At the trial, the plaintiff gave in evidence articles of co-partnership between the defendant and Bierman, which partnership was for the purpose of carrying on the distilling business, in which articles of co-partnership the following clauses appeared:

"Agreement of partnership made and entered into by and between Charles L. Bierman and John Braches for the purpose of establishing and carrying on a distillery on the following conditions, to-wit:

Braches vs. Anderson.

"1st. The business shall be carried on, on the premises of said Bierman by him heretofore used for that purpose, situate on Nodaway in New Breman.

"2nd. The distillery as it now exists shall be so extended as to admit of distilling from 325 to 350 bushels of grain per day into whiskey, and the cost of such extension is estimated at about two thousand dollars.

"3d. The expenses of the aforesaid enlargement said Bierman receives as a loan from said Braches and the making of each and every alteration after being agreed upon by the parties, is left to said Bierman,

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

"9th. Charles L. Bierman takes upon himself the care of the out-door business, such as the purchasing and procuring all material and objects necessary in the business and also the sale of the liquors.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

"16th. All further new building which the said partners during the partnership shall find suitable to erect, shall be paid for out of the profits of the business and at their separation they shall remain the property of said Bierman who shall then pay one half of the costs of said buildings to the said John Braches without deduction,

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

"20th. All repairs made after the operation of the business shall have commenced on the buildings and other fixtures of the distillery are to be paid out of the funds of the business."

This agreement or article of co-partnership was signed by Charles L. Brerman & Braches, (the defendant) and bears date October 2, 1848.

The plaintiff then called his clerk, who proved that the lumber in question, was ordered by Bierman after the formation of said co-partnership—that the lumber was delivered at the distillery, used by said Bierman & Braches, and was used in repairing the distillery buildings—that the lumber was charged at the time on the books of the plaintiff against Bierman —that the reason why it was so entered on the plaintiff's books, was, that Bierman before had had dealings of a like nature with the plaintiff, and to save the trouble of offering another account, the lumber sued for was entered in the account against Bierman.

The witness spoke to Bierman about the account at the time, and he told witness to continue it in the same name. The same witness testified, that after the formation of said partnership, he presented a bill to Bierman for lumber ordered by him, and used in repairing said distilery. Bierman took witness to defendant's house, and he, the defendant, paid the bill so presented. The conversation between Bierman and the defendant, when this bill was presented and paid, was in German, which the witness did not understand. It also appeared in evidence that Bierman had carried on the distilery business at the same place and in the same building before his co-partnership with the defendant.

The defendant then proved that he had made large advances to Bierman for improving and enlarging the said distillery building, by paying bills contracted by Bierman for that purpose when requested by him.

This was all the evidence. The court then instructed the jury as follows:

1. If the jury believe from the evidence that the defendant Braches and C. L. Bierman were co-partners and that the lumber sued for was sold by plaintiff to said Braches, or either of them while they were such partners for the use and for the benefit of their co-partnership business, the plaintiff is entitled to recover.

2. The fact that the lumber was not charged on the books of the plaintiff against the defendant is not material if he was in fact at the time a co-partner, and the lumber was furnished for the business, and for the objects of said copartnership.

To the giving of which the defendant objected.

On motion of defendant the court gave the following instruction:

If the jury believe from the evidence that the plaintiff furnished lumber [to] Bierman to repair his distillery and rendered him alone an account thereof and never considered it a claim

against Braches till after Bierman's death, this circumstance is proper to be considered by the jury as tending to show that Braches was not considered by the party as liable for the lumber.

The following instructions were asked by the defendant, but refused, and the defendant duly excepted.

Unless the jury believe that at the time of the furnishing the lumber in question to Bierman for the repairing of his dwelling, that Braches was partner in the distillery itself, as well as in the business of distillery to be thereafter carried on there, Braches is not liable as a partner to this action.

Unless the jury find that Braches either contracted personally for the lumber in question, or that he was personally interested in the distillery house for the repair of which the lumber was furnished, he is not liable in this action.

The jury retired, and returned into court an informal verdict, which the court refused to receive, and the jury was directed to retire and consider further of their verdict, and at the same time the court gave to the jury the following instruction :

If the jury find for the plaintiff they may compute interest on the amount they shall find, from the commencement of this suit to the present time.

The jury returned a verdict for the plaintiff.

The defendant then in proper time filed his motion and reasons for a new trial, as follows :

1. The verdict is against the weight of evidence.

2. The court gave to the jury illegal and improper instructions for the plaintiff.

3. The verdict is against law.

4. The verdict is against the evidence.

5. The court refused to give to the jury, legal and proper instructions, prayed by the defendant.

6. The court gave an instruction after the jury returned a verdict.

The motion was overruled and the defendant duly excepted; and the case comes into this court by appeal.

The errors assigned are—

1. The said judgment was rendered in favor of the plaintiff, when by the law of the land it should have been rendered in favor of the defendant.

2. The court gave the jury improper and illegal instructions in behalf of the plaintiff.

3. The court refused to give to the jury legal and proper instructions moved by the defendant.

4. After the jury had returned a verdict the court gave a further instruction.

5. The court refused to receive the first verdict returned by the jury.

6. The court refused to grant a new trial to the defendant, as it should have done.

## Gamble & Bates, for appellant.

1. The lumber was furnished by Anderson without any contract by Braches, personally, or any promise by him to pay for it; Braches, therefore, cannot be liable directly and personally; but, if liable at all, only indirectly, and as a partner of Bierman.

2. The lumber was furnished by Anderson for the repair and improvement of the real estate, the distillery house, and fixtures of Bierman, just as he had been in the habit of furnishing to Bierman before that time for the same purpose, and charged in account to Bierman, just as he had been in the habit of doing before Braches had any connexion with Bierman. Hence, it would be just as legal to charge Braches with the purchase money of the land itself, as with the cost of these improvements upon it.

3. The partnership of Braches and Bierman was in the business of distilling, and not in the ownership of the house and fixtures, and of this Anderson had had notice, for he had dealt with Bierman before, in connexion with the distillery, and he knew the nature of the new

Braches vs. Anderson.

partnership, for he gave the articles in evidence at the trial of this cause below; he knew that the house and fixtures were Bierman's, and that thcy were to be put into the new concern, to balance the money of Braches; and, hence, if Bierman had been bound by the articles, to put in a sum of money, and Anderson had lent him the money for that purpose, he, Anderson, might just as lawfully hold Braches liable for the money so lent as for this lumber.

4. It is no answer to say that the application of the lumber furnished to the repair and improvement of the dwelling might benefit Braches by advancing the interest of the new firm, for that might be said with equal propriety of the loan of money as above supposed, or any other act done for a partner, which might the better enable him to fulfil his engagements to the firm. This lumber was not furnished to Braches, nor to Bierman & Braches, nor on account of Braches in any form, but to Bierman alone, and to enable him to put his property in the condition in which he had agreed to put it in order to carry on the partnership business which he and Braches were about to commence.

5. The hard facts of this case may serve to illustrate the principle. Bierman is dead, the partnership dissolved, and his real estate gone to his heirs, increased in value by the amount of Anderson's lumber. Anderson might, if he would, have filed a builder's lien against the property, or exhibited his claim in common form against the estate of Bierman. But he choses to sue Braches, with whom he had no contract, to whom he furnished nothing, and whose estate is not improved, as Bierman's is by the transaction.

6. The intention and understanding of Anderson, at the time he furnished the lumber, ought to have a controlling influence against the present claim. He knew that he was dealing with Bierman, and understood that Bierman was his debtor, and committed himself to that knowledge and understanding by cha ging the lumber to Bierman alone on his books.

This, I suppose to be the pervading principle in all matters of contract, the understanding of the parties at the time. It has been adjudged very often against claimants, and in cases much stronger than this. Even where the parties sued were the actual makers of the contract, the understanding of the parties at the time, and the attendant circumstances, have been held sufficient to override even the terms of a contract and fix responsibility upon the rea party alone, on whose account the work was done or the goods furnished

In a great leading case, McBeth vs. Holdeman, 1 term R. 172, Lord Mansfield in declaring the judgment of the Court of King's Bench, says, "it was notorious that the defendant did not personally contract; the plaintiff knew at the time that he furnished the stores that they were for the use of Government, and he afterwards made Government debtor in his bills."

The principle of this case is settled law, and I believe is universally followed. See following cases: Hodgson vs. Dexter, 1 Cranch, 345 (Curd. Rep. 329); Walker vs. Swartwout, 12 I. R. 444.

The question in all cases is, to whom was the credit given? Rathbun vs. Budlong, 15 I. R. 1.

And our own decisions are substantially the same, 1 Mo. R. 684; Laughlin et al. vs McDonald, in which this court directed issues to ascertain what fund the plaintiff looked to for his pay; and whether he knew at the time he made the contract, what fund he was to be paid out of.

And in 2 Mo. R. 217, McDonald vs. Franklin county, this court says, "it would be stigma upon the law, if a contract made by the commissioners in the strict line of their duty, for and on account of the county, and of which the county has received the benefit, could be enforced."

Let me not be answered these are cases of public agency, and therefore inapplicable; they are all the stronger for that, I cite them for the principle, and as they prove that the under-standing of the plaintiff at the time of the contract shall control his claim, and that the real party, on whose account and for whose benefit the debt was created, shall alone be held responsible; certainly an agent may bind himself for the debt of his principal, whether that principal be the public or a private man; if, as the court say, in Hodgson vs. Dexter, above "he use apt words to charge himself, and it appears to be the intention of the parties that he should be charged."

But here Braches made no contract, received no goods, and has derived no benefit from the transaction; and Anderson, at the time, did not consider him his debtor, for he made Bierman "debtor in his bills."

But even if Anderson had, at the time, considered Braches his debtor, he was not warranted in so doing, because Braches personally made no contract with him, and his partnership with Bierman was not in the purchase of lumber, or in the real estate improved by Anderson's lumber ; and this is not a case in which Braches is held liable for the reason that he had held himself out to the world as a partner, for the only proof of partnership was the articles of co-partnership.

Todd & Krum, for appellees.

1. The question of co-partnership between Bierman and the appellant in the distilling business, at the time the lumber in controversy was sold, was properly and fairly submitted to the jury by the instructions of the court below, and this court will not disturb the verdict.

2. The question, also, whether the lumber sold by the appellee was for the benefit as used by the co-partnership or firm of Bierman & Braches, was fitly and fairly submitted to the jury by the instructions of the court below, and the jury on this point found that the lumber was for the benefit of said firm, and this court will not re-examine the question.

3. The agreement between Bierman and Braches for the formation of their co-partnership, contemplates and provides for the very improvements in their distillery building, for which the lumber in question was sold and used. There was evidence tending to prove that Braches knew, at the time of the sale and delivery of the lumber and of the purpose for which it was purchased, and the use that was made of it.

This whole matter, we submit, was fully and fairly presented to the jury, and their verdict is manifestly for the right party.

4. Any agreement or private understanding between Bierman and Braches as to which of them should bear the expense of necessary repairs to their distillery building or apparatus, does not affect the appellee, for he had no knowledge of any such understanding, and there was no evidence proving or tending to prove that the appellee was cognizant of any such private understanding between them.

Napton, J., delivered the opinion of the court.

The question of partnership in this case was fairly submitted to the jury, upon instructions which are unexceptionable. We cannot perceive the hardship of which the appellant complains, upon the ground that the land and improvements for which the lumber was furnished go to the heirs of the co-partner Bierman. If the facts be as he contends, his claim to be re-imbursed from that estate is unquestionable—but with this settlement strangers dealing with the firm have no concern. Judgment affirmed.